## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE  DIVISION

| | | |
|---|---|---|
| **DOMINIQUE HERMAN ADAMS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23CV00317 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **JOHNATHAN S. HORNE, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |
| | ) | |

*Dominique Herman Adams, Pro Se Plaintiff.*

The plaintiff, Dominique Herman Adams, a Virginia inmate proceeding pro se, filed this action under 42 U.S.C. § 1983.  Upon review of the Complaint as supplemented, I conclude that the claims in this action must be summarily dismissed as barred by Adams' previous litigation and as untimely filed.

## I.

Adams filed this action as of May 25, 2023, suing more than two dozen current or former officials at Wallens Ridge State Prison (WRSP), as well as administrators of the Virginia Department of Corrections, a former Governor of Virginia, the American Corrections Association, and Blue Mountain Capital.  Adams contends that these defendants violated his constitutional and state law rights related to force used against him at WRSP on May 20, 2014.

In brief, Adams alleges that on May 20, 2014, officers reported that two inmates (Adams and Inmate A. Collins) were fighting. Officers Stacy and Vanover fired oleoresin capsicum (OC)[1] rounds at these inmates, K-9 Officer Horne engaged his dog on Adams' left side in the ribs and back, and Officer Rollins dispersed OC spray on the inmates. Horne later reported that during the altercation, Adams struck the dog multiple times with his fist and scratched Horne's arm.

After the incident, medical staff treated Horne and Adams for their injuries, and officers escorted Adams to segregated confinement. Based on events on May 20, 2014, officers brought disciplinary charges against Adams for fighting with any person, malicious wounding or causing bodily injury to the dog, and aggravated assault on a non-offender. A hearing officer found Adams guilty of all these charges. The resulting penalties included loss of 120 days of good conduct time and an order for Adams to pay the dog's $380 veterinarian bill. Adams appealed the guilty findings and penalties on these infractions, but reviewing officials upheld the hearing officer's decisions. On June 1, 2014, officials terminated Adams from his prison job that had allegedly paid him $27.60 per week.

---

[1] Oleoresin Capsicum or OC is a chemical agent, similar to what is commonly known as pepper spray or mace, that irritates a person's eyes, throat, and nose. *Park v. Shiflett*, 250 F.3d 843, 848–49 (4th Cir. 2001).

Adams remained in segregated confinement until February 4, 2015. He sought and received mental health care regarding his concerns about the use of force incident on May 20, 2014.

In April 2015, Adams filed a § 1983 action in this court, Case No. 7:15CV00168, alleging claims of excessive force by Horne and Rollins, based on the use of the canine and OC spray on May 20, 2014. As relief, Adams sought monetary damages, prosecution of Horne and Rollins, expungement of the related disciplinary infractions, and restoration of his lost good conduct time. He later added a claim of negligence against Horne for allegedly failing to give a verbal warning before deploying the dog.

On February 8, 2016, the court denied the defendants' summary judgment motion as to Adams' claims of excessive force and negligence and referred the case to the magistrate judge to conduct a bench trial. *Id.*, Mem. Op. 1–3, ECF No. 30. In the same order, the court summarily dismissed Adams' claims seeking to bring criminal charges against others and those seeking to expunge disciplinary convictions and retore his forfeited good conduct time. *Id.* at 3.

Thereafter, the parties consented to have the magistrate judge decide the remaining claims in the case, pursuant to 28 U.S.C. § 636(c). The magistrate judge conducted a bench trial on May 11, 2016, and ultimately entered a Final Order in favor of the defendants. *Adams v. Horne*, No. 7:15CV00168, 2016 WL 8221568

(W.D. Va. June 9, 2016). Adams attempted an appeal, but the court of appeals dismissed the appeal on October 4, 2016, as untimely. In the seven years after that date, Adams filed numerous motions in the closed case, seeking a belated appeal, reconsideration of the judgment, reopening of the proceedings, and amendments to his pleadings. All of these motions were denied.

In his current Complaint, signed and dated on May 25, 2023, Adams reasserts the excessive force and negligence claims against Horne and Rollins for the use of the canine and OC spray on May 20, 2014. Adams also asserts new claims against the many new defendants. As relief in this case, Adams seeks seven million dollars in damages and referral of the matter for criminal prosecution.

II.

Adams' claims against defendants Horne and Rollins for allegedly using excessive force against him are barred. In his prior lawsuit, Adams litigated his Eighth Amendment claims against these defendants and his negligence claim against Horne. From the evidence presented at trial, the court found in favor of the defendants and dismissed the case with prejudice. "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Owen-Williams v. Higgs*, No. DKC 18-0439, 2019 WL 448810, at *2–

4 (D. Md. Feb. 5, 2019).[2]   Thus, the doctrine of res judicata bars Adams from relitigating his excessive force and negligence claims against them in the current action, and from asserting any claims that he could have raised against them in the prior action. *Jones v. Brown*, No. 3:20CV331-HEH, 2021 WL 5237239, at *4 (E.D. Va. Nov. 10, 2021), *aff'd*, No. 21-7649, 2022 WL 4182769 (4th Cir. Sept. 13, 2022) (unpublished).

Adams' new claims related to the use of force incident in May 2014, must also be summarily dismissed.  Some of these claims are likely barred by res judicata, based on the close connections between the claims against Horne and Rollins and the claims against many of the newly named defendants who are in privity with them. *Owen-Williams*, 2019 WL 448810, at *3 (setting forth elements required for res judicata, including privity between defendants).  I decline, however, to parse out potential privity between the myriad of defendants Adams has named to determine the application of res judicata principles as to each of his multiple, newly asserted claims.  Rather, I conclude that all of Adams' current claims are barred by the applicable statute of limitations, because he has waited too many years to bring them.

First, Adams' state law claims are untimely filed under the statute of limitations in Virginia Code Ann. § 8.01-243.2.  This section applies a one-year

---

[2]   I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion and Order, unless otherwise noted.

limitation period to personal injury actions relating to conditions of confinement in a state or local correctional detention facility. *Lucas v. Woody*, 756 S.E.2d 447, 451 (Va. 2014). However, the limitation period in a Virginia statute may be tolled if the plaintiff satisfies any state tolling provision in Va. Code Ann. § 8.01-229. Adams did not present the state law claims in his current Complaint within one year after the events on which they are based, which occurred in 2014. Therefore, absent a showing that Adams is entitled to tolling of this provision's filing period, his state law claims are time barred from review on the merits.

Second, Adams has also waited too long to file his federal constitutional claims under § 1983. Because Congress did not set time limits for filing a § 1983 action, courts must utilize the statute of limitations applicable to general personal injury actions in the state where the tort allegedly occurred. *Owens v. Okure*, 488 U.S. 235, 239, 250 (1989). Such actions in Virginia are subject to Va. Code Ann. § 8.01-243(A) and thus must be filed within two years from the date on which the claim accrues. *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). A § 1983 claim accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

It is self-evident that Adams knew of his alleged injuries by the defendants within days of the alleged events in 2014 and could have discovered his claims

against them through a reasonable inquiry. *Id.* at 955. Thus, I find that his § 1983 claims accrued no later than the end of 2014. Yet, Adams did not sign and date his current Complaint until May 25, 2023, eight years after his claims accrued.[3]

III.

Although Adams attempts to invoke tolling under section 8.01-229(A)(2)(b), he fails to state facts that sufficiently support his tolling argument. Section § 8.01-229(A)(2)(b) provides that if after a cause of action accrues, the "person entitled to bring such action becomes incapacitated, the time during which he is incapacitated shall not be computed as any part of the period within which the action must be brought." "[A] person shall be deemed incapacitated if he is so adjudged by a court of competent jurisdiction, or if it shall otherwise appear to the court or jury determining the issue that such person is or was incapacitated within the prescribed limitations period." *Id.* In applying this section, courts have adopted the more specific definition of "incapacitated" in Va. Code Ann. § 37.2-1000 (now codified at § 64.2-2000):

> "Incapacitated person" means an adult who has been found by a court to be incapable of receiving and evaluating information effectively and responding to people, events, or environments to such an extent that the individual lacks the capacity to (i) meet the essential requirements for

---

[3] An inmate's § 1983 action is commenced for purposes of the statute of limitations when he delivers his complaint to prison authorities for mailing. *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735–36 (4th Cir. 1991). For purposes of this Opinion, I will assume that Adams delivered his Complaint to authorities for mailing on the same day that he signed and dated it.

his health, care, safety, or therapeutic needs without the assistance or protection of a guardian or (ii) manage property or financial affairs or provide for his support or for the support of his legal dependents without the assistance or protection of a conservator. A finding that the individual displays poor judgment alone shall not be considered sufficient evidence that the individual is an incapacitated person within the meaning of this definition.

*Calvert v. State Farm Fire & Cas. Co.*, No. 5:12CV00017, 2012 WL 2804838, at *9 (W.D. Va. July 10, 2012) (quoting what is now Va. Code Ann. § 64.2-2000). "A finding that a person is incapacitated shall be construed as a finding that the person is 'mentally incompetent' as that term is used in Article II, Section 1 of the Constitution of Virginia and Title 24.2 unless the court order entered pursuant to this chapter specifically provides otherwise." Va. Code Ann. § 64.2-2000.

Adams asserts that mental health issues he has allegedly encountered during the years since the September 2014 incident qualify him as incapacitated for purposes of tolling under 8.01-229(A)(2)(b). A summary of Adams' evidence about his mental health issues, however, clearly fails to meet the required definition of incapacitation.

Adams alleges that on June 30, 2015, Mattie Wright (a prison psychology associate) diagnosed him with post traumatic distress disorder (PTSD) in the wake of the incident on May 20, 2014, but failed to treat him. Compl. 63–64, ECF No. 1.[4]

---

[4] Citations to page numbers in the Complaint and its exhibits refer to the numbers assigned to these filings by the court's electronic filing system and not to the page numbers on Adams' original filings.

He claims that the scars from the dog bites he incurred on May 20, 2014, serve as a "continued reminder" of that day, allegedly causing him to suffer "severe anxiety, that leads to chest pains, nightmares, restlessness, and being unable to maintain focus on a subject for a long period of time, including sleeplessness." *Id.*

Adams also submits copies of mental health progress notes. One note, dated June 15, 2015, indicates that at Adams' request, Senior Qualified Mental Health Professional (QMHP) Saylor met with him privately. Saylor reported seeing no concerning symptoms regarding Adams' appearance, behavior, mood, affect, thought content, perceptual disturbances, or thought or memory processes. Saylor noted that "testing using PAI [Personality Assessment Inventory] would be utilized" and advised Adams to address concerns about the 2014 incident with security staff and investigators. Compl. Ex. O, at 37, ECF No. 1-1. Saylor recorded that Adams "appears stable currently with no overt affective symptoms," that his "[p]rognosis is fair currently [and he] has no diagnoses at this time." *Id.* at 38.

Another document that Adams attaches, dated June 20, 2015, notes that after Adams reported PTSD symptoms, he was given PAI testing on that date. This record specifically indicates "[no] clinically significant symptoms of thought or mood disorder or other signs of mental disorder observed." Ex. P, at 39, ECF No. 1-1. The report, signed and dated by Wright, states: "No recommendations at this time." *Id.*

Adams also asserts that he requested mental health care in 2022. He claims that on August 26, 2022, QMHP R. Gilly Jr. examined him and noted observing signs of anxiety, agitation, or tension, and "pressured voice." Compl. Ex. U, at 43, ECF No. 1-1. Gilly noted "some clinically significant symptoms of thought or mood disorder" that Adams believed were "possibly consequential of an incident that occurred on May 20, 2014." *Id.* Gilley reported that Adams would be referred to see the psychiatrist, Dr. McDuffie. At that psychiatry exam on September 6, 2022, Dr. McDuffie noted that Adams reported "daily anxiety he cannot control, restless, sleepless, irritable, and has problems concentrating." Compl. Ex. V, at 44, ECF No. 1-1. The doctor assessed Adams with a "possible personality d/o" and recommended trying the medication Prozac.[5] *Id.*

Adams has also amended his Complaint with additional allegations and argument about his mental health issues. He contends that at the time of his civil trial in May 2016, he had all the evidence necessary to win, but the court allegedly discounted his testimony because he "was incapable of defending himself," purportedly because of the mental health issues he now presents. Mot. Am. 2–3, ECF No. 5. Adams also asserts that he was "impeded by his 2015, average level of intelligence" which he describes as the equivalent of "mental retardation." *Id.* at 3.

---

[5]   Exhibits U and V, at 43–44, ECF No. 1-1, are largely consistent with Adams' report of his mental health visits in 2022 and indicate that Dr. McDuffie recommended trying Prozac for thirty days.

In support of this contention, Adams cites to Exhibit H in Case No. 7:10CV00383, a Petition for a Writ of Habeas Corpus he filed in this court in August 2010.  *Adams v. Watson*, Case No. 7:10CV00383, at 10, ECF No. 1-4.  This exhibit is a letter dated July 24, 2003, from his attorney in a criminal case, advising that the attorney would not be seeking to exclude Adams' previously provided statement on the ground that Adams was mentally retarded.  Specifically, counsel reported that a doctor who had recently "performed a psychological on [Adams]" stated that Adams' retardation is "borderline at most.  He also indicated that based upon [Adams'] past experiences with the police and his general 'street smartness,' he could not testify that [Adams] lacked the capacity to make a voluntary and knowing waiver of his Miranda rights." *Id*.  Instead of moving to exclude Adams' statement, counsel stated his belief that Adams' best interests would be served by negotiating a plea agreement.  Finally, Adams points out that he has had two prior § 1983 cases dismissed as frivolous in 2015 and has had many grievances and disciplinary appeals dismissed.  He apparently blames these outcomes on his alleged mental incapacitation.

I do not discount Adams' belief that the events on May 20, 2014, caused him some mental and emotional disturbance.  He may also have borderline mental retardation, as his former attorney mentioned in a letter more than twelve years ago.  That attorney, however, did not find evidence on which to argue that Adams was mentally incapacitated so as to prevent him from knowingly and voluntarily entering

into a plea agreement in 2003. Similarly, I cannot find that the symptoms and diagnoses Adams reports from 2010, 2015, and 2022 rise to the level of mental incapacitation for purposes of equitable tolling. First, from April 2015 through June 2016, Adams was able to prosecute his civil rights claims in this court in Case No. 7:15CV00168. He established sufficient disputes of fact to survive summary judgment on his excessive force claims and presented his evidence and testimony to the court during a trial. The judge's decision finding that the defendants' actions on May 20, 2014, did not qualify as excessive force under the circumstances presented during trial is not proof that Adams lacked the mental capacity to present his evidence and argue his case. Thereafter, Adams pursued an appeal and multiple post-appeal motions in this court. Again, the fact that he did not prevail at trial or on appeal, and the denials of his many motions and administrative remedies and appeals are not evidence of mental incapacitation sufficient to warrant tolling under section 8.01-229(A)(2)(b). Likewise, the court's dismissal of his prior § 1983 cases does not demonstrate that he was, at any point, mentally incapacitated to the extent required to warrant tolling.

Second, none of Adams' evidence concerning his mental health issues in 2015 and 2022 indicate that he suffers from any condition so debilitating as to constitute the nature of mental incapacitation contemplated by § 8.01-229(A)(2)(b) for tolling purposes. Adams does not show that he is or has been incapable of receiving and

evaluating information or has been unable to take care of his basic health and safety needs.  Merely being diagnosed with mental health conditions for which medication is prescribed on a temporary basis is not evidence of incapacitation that supports tolling under Va. Code Ann. § 8.01-229(A)(2)(b).  *Calvert,* 2012 WL 2804838, at *9 (holding that plaintiff's depression, anxiety, physical ailments, ongoing medical and psychological treatment, prescription drug therapies, loss of employment and loss of ability to drive a car did not qualify her as incapacitated under § 8.01-229(A)(2)(b)); *Kumar v. Glidden Co.*, No. 2:05-CV-499, 2006 WL 1049174, at * 9 (E.D. Va. Apr. 13, 2006) (holding that plaintiff was not incapacitated for tolling purposes, because she was able to "conduct her own affairs, to work, and to raise her children," despite her listed medical and mental health issues, including panic disorders, bi-polar/manic depression, and impaired memory).

IV.

When a court finds it clear from the face of the plaintiff's submissions that his legal claims are time barred and he filed his lawsuit in forma pauperis, the court may summarily dismiss the action as frivolous.  For the reasons stated, I find it plain from Adams' filings in this case that his federal and state law claims are either barred by res judicata or as untimely under the applicable statute of limitations. Therefore, I will summarily dismiss this action as frivolous, pursuant to 28 U.S.C. § 1915A(b)(1).

An appropriate Final Order will enter herewith.

DATED:   February 7, 2024

/s/  JAMES P. JONES
Senior United States District Judge